# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 17, 2011

## SISAVANH KEOMONGKOUT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-65071     Don. R. Ash, Judge**

**No. M2011-00317-CCA-R3-PC - Filed December 21, 2011**

The Petitioner, Sisavanh Keomongkout, appeals the Rutherford County Circuit Court's denial of post-conviction relief from his convictions for second degree murder and attempted first degree murder and his effective forty-year sentence. On appeal, he contends that trial counsel rendered ineffective assistance by (1) failing to provide the Petitioner with discovery materials before the Petitioner entered his guilty pleas, (2) failing to discuss the definition of first degree murder and lesser included offenses with the Petitioner, and (3) failing to inform the Petitioner that he could hire an expert witness. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., and DONALD P. HARRIS, SR. J., joined.

Kerry Knox (on appeal) and Bert McCarter (at trial), Murfreesboro, Tennessee, for the appellant, Sisavanh Keomongkout.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; William Whitesell, District Attorney General; and Trevor Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner pled guilty to two counts of second degree murder and one count of attempted first degree murder and was sentenced to concurrent terms of twenty-five years' confinement for each second degree murder conviction and to a consecutive term of fifteen years' confinement for attempted first degree murder, for an effective forty-year sentence. The facts of this case were recited by the State at the guilty plea hearing:

[On] June 29th of 2008, an individual by the name of Somsack had gotten into an altercation with some people. After this altercation he called . . . [a] man by the name of Lakky Phosy. Asked that individual to retrieve a firearm as well as call some additional friends. Those friends included [the Petitioner] along with several other individuals. They went to a party where some of these individuals were believed to be. Mr. Somsack and Mr. Phosy went towards the party while [the Petitioner], who held a semi-automatic weapon, stayed behind. A fight broke out at the party and [the Petitioner] fired at least nine rounds into the party area, into the crowd. Three individuals were hit. As a result, Mr. Land Vongsaphay and Mr. Kousonh Luangrath lost their lives and a third individual was struck, was taken to the hospital and survived his injuries. [The] Murfreesboro Police Department was called out to investigate . . . [and] they eventually questioned [the Petitioner] who acknowledged that he did have the firearm. That it was given to him by somebody else. That he did fire several rounds. It would be his position that he did not intend to kill anybody but understands that his actions did cause the loss of life of others.

In response to questions from the trial court, the Petitioner testified that he was not forced or coerced to enter the plea agreement. He said he reviewed the plea agreement with trial counsel, understood the agreement, did not have questions about it, and signed it. He agreed that he was pleading guilty to second degree murder because he was guilty. He said he understood that the sentences for second degree murder would run consecutively to the sentence for attempted first degree murder. He said he understood that by pleading guilty, he waived his rights to a speedy public trial; trial by jury; the assistance of counsel; the presumption of innocence; the right to remain silent; the right to see, hear, and cross-examine witnesses against him; the right to compel production of any favorable evidence; and the ability to file a motion for a new trial or an appeal. He said he understood that the convictions could be used to enhance the punishment of future convictions.

The Petitioner testified that trial counsel did a good job and that he had no complaints regarding trial counsel. He agreed that trial counsel explained the range of punishment, what the State would have to prove in order to obtain convictions, and any potential defenses. He said that trial counsel went over the elements of first degree murder, second degree murder, voluntary manslaughter, and "all those other options in there" and that he did not have any questions regarding the elements. He said trial counsel did everything the Petitioner requested of him in preparing for the case. He said he agreed to plead guilty because it was "the best."

In response to questions from the State, the Petitioner agreed that he took the weapon voluntarily before the murders. He acknowledged that he caused the death of the victims and accepted responsibility for his actions.

In response to questions from trial counsel, the Petitioner agreed that trial counsel met with him several times and that they discussed the elements of each charged offense. He agreed that trial counsel explained that given the Petitioner's exposure, the plea agreement was in his best interest. He agreed that trial counsel explained the plea agreement on several occasions and that counsel spoke with the Petitioner's family. He said he understood that after he entered into the agreement, he could not change it. He said he wanted to go forward with the plea agreement. In response to an additional question from the trial court, the Petitioner testified that he was entering into the agreement freely and voluntarily based upon his own decision, not trial counsel's decision.

At the post-conviction hearing, the Petitioner testified that he was charged with these crimes when he was nineteen, about one month after he graduated from high school. He said he had no previous arrests or experience with law enforcement. He said that the charges were pending for about nine months before he pled guilty and that trial counsel met with him on five occasions during that time, with each meeting lasting about ten to fifteen minutes. When asked if there was anything he requested trial counsel to do that trial counsel failed to do while the charges were pending, the Petitioner responded that he asked trial counsel to provide him with discovery materials and to determine if he should argue that the killings were reckless homicides. He said he believed the killings were reckless homicides because they were accidents. He said that the weapon he fired was an automatic AK-47 assault rifle, that he had no experience with firearms, and that the gun was difficult to control.

The Petitioner testified that he did not learn that his statement to the police was recorded until the post-conviction process began and that he did not review the recording before he pled guilty. He said that he reviewed the recording before the post-conviction hearing and that his description of the incident was consistent with what he told trial counsel. On questioning from the trial court, the Petitioner agreed that he was present during the statement and that he knew what he said during his statement.

The Petitioner testified that he was not provided with discovery materials, including witness statements, but that he reviewed the statements before the post-conviction hearing. He said that there were discrepancies in the witness statements and that witnesses stated that his co-defendant, Lakky Phosy, could have fired the shots or was the shooter. He identified two witness statements written in Lao and said that he could not read Lao and that trial counsel did not have the statements translated. He identified a Tennessee Bureau of Investigation (TBI) firearms report and said he was not provided with the report before he pled guilty. He said the report stated that the similarities of markings on the recovered shell

casings were insufficient to conclude that they were fired from the AK-47 he fired. He said the only discovery materials he reviewed before entering his guilty pleas were his co-defendant's statements. He said that he pled guilty because he "didn't know of any other route" and that if he had been provided with discovery materials, he would have had a stronger defense and would have insisted on going to trial. He said that trial counsel did not want to go to trial and that he was "backed into a corner and didn't have a defense at the time."

The Petitioner testified that trial counsel did not discuss lesser included offenses with him and that he did not know what lesser included offenses were at the time of his guilty pleas. He said he did not know that he could have been convicted at a trial of anything other than the charged offenses. He said he did not understand the difference between felony murder and premeditated murder or what proof the State would use to establish premeditation. When the trial court noted that the Petitioner agreed at the guilty plea hearing that trial counsel went over the different elements of "the crime of murder in the first degree, second degree, voluntary manslaughter, and all those other options," the Petitioner denied that trial counsel went over those items. The Petitioner said that he was not truthful at the guilty plea hearing and that he lied because he felt he was "boxed in" at the time and he did not understand lesser included offenses. He said that at the time of his guilty pleas, he did not know that reckless homicide was a potential lesser included offense. He did not know if trial counsel discussed a potential plea bargain involving reckless homicide with the State.

The Petitioner testified that although trial counsel explained that the State planned to use an expert witness at a trial, counsel did not explain if he could hire his own expert. He said that had he known he could hire an expert, it would have changed his understanding of the "whole situation." He agreed an expert could have corroborated his theory that the killings were accidental. On questioning from the trial court, the Petitioner testified that he was not truthful when he previously stated that his guilty pleas were voluntarily entered into, that trial counsel did a good job, and that he had no complaints about trial counsel's performance.

On cross-examination, the Petitioner agreed that he discussed reckless homicide with trial counsel and that he wanted trial counsel to discuss with the State a plea agreement involving reckless homicide. He agreed that reckless homicide was a lesser included offense of murder and that he wanted trial counsel to discuss reckless homicide with the State because he understood it to be a lesser included offense. When asked if the Petitioner had contradicted himself, he responded, "The only thing he discussed was the reckless homicide and I didn't know that was a lesser included offense. That is a lesser included offense. I thought it was just another charge." He agreed that trial counsel mentioned reckless homicide and the possibility of a plea agreement involving reckless homicide, but that trial counsel did not discuss "anything else." He agreed that he was under oath when he lied to

-4-

the trial judge at the guilty plea hearing and that he previously stated he discussed lesser included offenses with trial counsel.

The Petitioner agreed that although he asked trial counsel several times to provide him with discovery materials and that trial counsel failed to do so, he told the trial court at the guilty plea hearing that trial counsel performed all tasks the Petitioner requested. He said he lied when he told the trial court that the plea agreement was voluntarily entered into and based on his own decision. He said that if he had known he could have had an expert witness at a trial, he would have done so. He agreed that he did not have an expert witness at the post-conviction hearing and that he had no idea what an expert would say.

The Petitioner testified that he was honest when he told the police that he fired the AK-47 into the air because he saw Mr. Phosy and Mr. Chanthalay getting hit with chairs and bottles and that he accidentally tripped due to the weapon's recoil and changed the trajectory of the gun. He agreed that Mr. Phosy handed him the gun, that Mr. Phosy did not have a rifle in his hands, and that he made the conscious decision to fire the weapon after he saw Mr. Phosy get into a fight. He agreed that any witness who thought Mr. Phosy had a gun was not correct and that any witness's statement that Mr. Phosy had a gun would not provide him with a defense. He said that to his knowledge, there was only one gun: the gun he fired. He agreed that the TBI report he previously identified concluded that two recovered bullet casings were fired from the same gun and that although a third casing contained similar characteristics and could have been fired through the same gun, the similarities were insufficient for a more conclusive examination. He agreed the report never stated that the third casing was fired through a different gun.

The Petitioner agreed that trial counsel discussed the elements of the charged crimes and the incriminating evidence. He said trial counsel did not discuss defenses or of what he could not have been convicted. He said that although he told trial counsel he understood to what he planned to plead guilty, he did not actually know to what he pled. On redirect examination, the Petitioner agreed that he consistently stated that although he fired the gun several times, the killings were accidental.

In denying the petition for post-conviction relief, the trial court found that the Petitioner's post-conviction testimony was not credible. With regard to the claim that trial counsel failed to provide the Petitioner with discovery materials, the trial court found that the Petitioner previously testified that trial counsel did a good job, that he had no complaints with trial counsel's performance, and that trial counsel performed all tasks requested by the Petitioner. The trial court also noted that "the statements of witnesses do not have to be disclosed until after the witness has testified." With regard to the claim that trial counsel failed to discuss lesser included offenses, the trial court found that the Petitioner "testified twice at the hearing that [trial counsel] did in fact go over elements of lesser-included

offenses with him and even his family members before entering his plea. Although [the Petitioner] stated at the hearing that he was being untruthful at the time, this Court does not find him credible." The court found that the Petitioner failed to present clear and convincing proof that trial counsel's performance was deficient or that the Petitioner was prejudiced by counsel's performance. This appeal followed.

The burden in a post-conviction proceeding is on the Petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). Once a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Questions regarding the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 579. The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In the context of a guilty plea, the prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated

that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

**I**

The Petitioner contends that trial counsel rendered ineffective assistance because he failed to provide the Petitioner with discovery materials before the Petitioner entered his guilty pleas. He argues that his recorded statement to the police, witness statements showing that there may have been a second shooter, and a TBI report showing that there could have been another firearm at the scene would have assisted with his defense and that he would not have entered his pleas and would have gone to trial had he been provided with these materials. The State contends that the trial court properly determined that the Petitioner failed to establish his claim. We agree with the State.

Defense counsel have a duty to confer with clients to determine potential defenses and strategies and a duty to conduct appropriate investigations to determine what matters of defense can be developed. See Baxter, 523 S.W.2d at 932-33. When a petitioner alleges that counsel failed to investigate exculpatory evidence or advise the petitioner of a potential affirmative defense, the determination of whether the error prejudiced the petitioner will depend on whether the evidence would likely have led counsel to change his plea recommendation or whether the defense would likely have succeeded if there had been a trial. Lockhart, 474 U.S. at 59.

Although the Petitioner claimed at the post-conviction hearing that trial counsel failed to comply with his requests for discovery materials, the Petitioner previously testified that trial counsel performed all tasks requested by the Petitioner, that trial counsel met with him multiple times and explained the charged offenses and all potential defenses, that trial counsel did a good job, and that he had no complaints about trial counsel's performance. We conclude that the evidence does not preponderate against the trial court's finding that the Petitioner's post-conviction testimony was not credible.

The Petitioner claimed that trial counsel was deficient for not providing him with witness statements showing that there may have been a second shooter, but the Petitioner agreed that any witness who thought Mr. Phosy had a gun was not correct and that any witness's statement that Mr. Phosy had a gun would not have provided him with a defense.

The Petitioner also claimed that trial counsel failed to provide him with his recorded statement to the police and a TBI report and that such materials would have assisted with his defense. The Petitioner agreed that he was present while giving his recorded statement to the police and that he knew what he said during his statement. The Petitioner has not demonstrated how having a recording of his statement would have provided any information or a defense not already known to him and counsel when he entered his guilty pleas. Furthermore, although the Petitioner claimed that the TBI report suggested that there could have been another firearm at the scene, he agreed that the report never concluded that the bullet casings recovered from the scene were fired by more than one gun. Instead, the report concluded that markings on two of the recovered bullet casings established they were fired through the same gun and that a third casing had markings that were consistent with the other two. The Petitioner said that to his knowledge, there was only one gun: the gun he fired. There is no indication that the TBI report would have provided a defense that would have been likely to succeed at a trial. The trial court found that the Petitioner failed to present clear and convincing proof that trial counsel's performance was deficient or that the Petitioner was prejudiced by counsel's performance. The evidence does not preponderate against the trial court's findings. The Petitioner is not entitled to relief.

## II

The Petitioner contends that trial counsel rendered ineffective assistance by failing to discuss the definition of first degree murder and lesser included offenses with the Petitioner before he entered his guilty pleas and that as a result, his pleas were not knowingly entered into. The State contends that the trial court properly found that the Petitioner failed to establish his claim. We agree with the State.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

-8-

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).  A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary."  Blankenship, 858 S.W.2d at 904.

Although the Petitioner claimed at the post-conviction hearing that trial counsel failed to discuss the definition of first degree murder and lesser included offenses with the Petitioner before he entered his guilty pleas, the Petitioner agreed that he discussed reckless homicide with trial counsel, that trial counsel mentioned the possibility of a plea agreement involving reckless homicide, and that trial counsel discussed the elements of the crimes with which he was charged and of what he could be found guilty.  At the guilty plea hearing, the Petitioner testified that trial counsel went over the elements of each offense with which he was charged, including explanations of first degree murder, second degree murder, voluntary manslaughter, and "all those other options in there," that he did not have any questions regarding the elements of the offenses, and that trial counsel explained what the State would need to prove in order to obtain convictions.  He also testified that he was not forced or coerced to enter the plea agreement and that he reviewed the plea agreement with trial counsel, understood it, and did not have questions about it.  He said that he understood the rights he waived pursuant to the agreement and that he was pleading guilty to second degree murder because he was guilty.  He said that he entered into the plea agreement freely and voluntarily based upon his own decision, not trial counsel's decision, and that he agreed to plead guilty because it was "the best."  As noted above, the evidence does not preponderate against the trial court's finding that the Petitioner's post-conviction testimony was not credible.  The trial court also found that the Petitioner failed to present clear and convincing proof that trial counsel's performance was deficient or that the Petitioner was prejudiced by counsel's performance.  The evidence does not preponderate against the trial court's findings.  The Petitioner is not entitled to relief.

**III**

The Petitioner contends that trial counsel rendered ineffective assistance by failing to inform the Petitioner that he could hire an expert witness.  The State contends that the Petitioner has waived any issue regarding trial counsel's failure to discuss the possibility of hiring an expert witness because he failed to raise the issue in either his original or amended petition for post-conviction relief.  Alternatively, the State contends that the Petitioner failed to establish this claim with clear and convincing evidence.  We conclude that the Petitioner has failed to establish this claim by clear and convincing evidence.

The State argues that an issue not presented in a petition for post-conviction relief may not be raised for the first time on appeal. See T.C.A. § 40-30-106(g) (2006) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. . . ."); State v. Townes, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000), overruled on other grounds by State v. Terry, 118 S.W.3d 355, 359 (Tenn. 2003). We note that this issue is not being raised for the first time on appeal. Unlike the waived issue in Townes, the Petitioner presented this issue to the trial court during the post-conviction hearing. Furthermore, the State did not object to the Petitioner's raising the issue at the post-conviction hearing. Had the State objected, the trial court could allow the Petitioner to amend the petition "and shall do so freely when the presentation of the merits of the cause will otherwise be subserved." Tenn. Sup. Ct. R. 28 §8(D)(5). We hold that the Petitioner has not waived this issue.

Although the Petitioner testified that knowing he could hire an expert would have changed his understanding of the "whole situation" and that an expert could have corroborated his theory that the killings were accidental, he also agreed that he did not have an expert witness at the post-conviction hearing and that he had no idea what an expert would say. We conclude that the Petitioner has failed to present clear and convincing evidence that trial counsel failed to discuss the possibility of hiring an expert witness or that he would not have pled guilty had he known he could hire an expert.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

 

_____

JOSEPH M. TIPTON,  PRESIDING JUDGE